Case number 23-1703 Robert W. Odell Jr. et al. v. Kalitta Air LLC et al. Argument not to exceed 15 minutes per side. Mr. Sullivan, you may proceed for the appellant. Good afternoon, Your Honors. John Sullivan for the appellants, and I would like to reserve four minutes for my rebuttal. May it please the Court. Without any evidence, Kalitta Air offered the District Court an imaginary seniority conflict, and then made the Catch-22 argument that the Court couldn't pull back the curtain to see if this was true, because that would be interpreting a CBA. There is no basis in the case law for such a limitation on workers' rights. RLA preclusion does not apply here for at least three reasons. First, there is no record evidence for Kalitta's seniority argument, or any indication that the hypothetical situation they complain of would have actually happened. Second, the case law uniformly explains that a court considering a CBA is not the same thing as a court interpreting a CBA. Third, Kalitta engaged in intentional discrimination, and such actions can't be saved by reference to inapplicable CBA terms, because pure fact questions do not trigger RLA preclusion. First, there is no indication that Kalitta's hypothetical seniority violation would ever happen. Kalitta certainly didn't make that showing, and under Paul v. Kaiser, this prevents preclusion. The magistrate said, quote, that Kalitta would have, quote, no other choice but to send pilots to certain countries. But Kalitta never showed what countries those were, that that's ever even happened once, or would happen, or how that would violate seniority. Tellingly, Kalitta never submitted the seniority provisions of the CBA to the District Court. They're not in the record. Therefore, they couldn't be interpreted if we wanted to. So did your side submit the seniority provisions of the CBA? We did not, Your Honor. So we submitted the two provisions that addressed the District Court's concern here about whether the pilots would have to be sent to foreign countries. And one of those was the scheduling provision that says Kalitta can move a pilot from one aircraft to another at its discretion. The other was the vaccine clause of the CBA, which says Kalitta does not have to send a pilot to a country if they don't have a required vaccine. That's a plain term of the CBA. And it directly contradicts the magistrate's key assumption. The magistrate said they have no other choice, but if you just look at, again, look at, not interpret, just look at the plain term of the CBA, it contradicts. The whole CBA was not included. Is that what you're saying in the record? That's correct, Your Honor. Kalitta submitted the table of contents for the CBA and then referred the District Court and said there are certain provisions. There's a provision about seniority, there's a provision about scheduling, and cited to the table of contents. Those actual CBA terms are not in the record and were not submitted by defendants. In terms of the collective bargaining agreement, aren't there seniority rules that affect whether or not senior pilots could be sent to foreign countries and that senior pilots get to choose where to fly? So that's, again, those provisions aren't in the record. But we would agree that bidding takes place based on seniority. Once the bidding takes place, another clause says that Kalitta can move pilots from one line to another. That doesn't violate seniority. Then it also, it can't violate seniority when you consider the vaccine clause. Because the vaccine clause clearly says Kalitta does not have to send a pilot to a country if they don't have a required vaccine. So we would just look at that plain meaning that no one disputes and we would say there's no problem here. That's the key assumption that the magistrate judge was relying on, is that Kalitta's hands were going to be tied. That was why, again, the magistrate didn't let us have discovery. We asked for discovery both about the CBA provisions and about potential solutions and accommodations that would have fallen outside the CBA altogether. We were denied all of that because the magistrate said they have no other choice. So because Kalitta has the ability under the CBA to say to a senior vaccinated pilot who has bid on this particular route, I'm going to move you to a completely different route so that a non-senior, non-vaccinated pilot can still have a job somewhere here. That's not a seniority problem under the CBA? No, Your Honor, that's allowed under the CBA. Simply because the CBA says that Kalitta can move these pilots around whenever, wherever, and for whatever reason it wants. That's correct, Your Honor. But again, there are potential solutions, of course, outside the CBA here. So perhaps Kalitta could have just asked our pilots to bid last or to not bid for countries where they would be required to have a vaccine. Other airlines, that's exactly what they did. They asked their accommodated pilots not to bid to go to certain countries. And again, we could have had voluntary schedule swapping between pilots. But if there are all these questions about how the CBA is involved or not, doesn't RLA preemption require that this not be decided by the district court? No, not at all, Your Honor. And that's a key mistake that the district court made. Referencing the terms of the CBA are not the same thing as interpreting a CBA. Interpreting a CBA means that you resolve competing positions and that there's a dispute over what terms mean or as in Stanley, there's a violation of the CBA. This court has said that in Imsweiler and Yelder. The Supreme Court has said this in Andrews, Trainman. Seventh Circuit has said this in Rabe. There's ample case law on this point that you can look at, you can examine, you can consult, you can weigh. All sorts of terms are used for this. And you have not crossed the line into interpreting a CBA. As this court recently confirmed in Yelder, a court can always refer to a CBA to consider the, quote, policies and procedures. And that makes sense because a court has to look to see if the terms are there, which again, they're not in this record, they weren't introduced, even though Kalitta had ample opportunity and certainly had motivation to introduce those terms. They're not here, but a court would need to look to see if they're there, to see if they're applicable, and to see if there actually is a disagreement, whether the parties dispute the meaning. Here, we don't dispute the meaning of any CBA provision. We agree that pilots can bid based on seniority. And we agree that Kalitta can move those pilots without touching seniority. Critically, Kalitta agrees with this also. Kalitta will never argue that it's not able, as we were talking about earlier, Judge Batchelder, to move those pilots from one line to another. ALPA, the union, will not disagree with this. All the parties agree that this can happen. And, of course, we don't dispute that Kalitta doesn't have to send the pilots to any country that they don't have a vaccine for. That's a plain term of the CBA. It's not up for interpretation. You mentioned ALPA. As I understand, there is a grievance proceeding going on, am I correct? That's correct, Your Honor. Can you describe what the status of that is and how it relates to this case? The grievances are all pending right now. They don't relate to this case because there was one group grievance and I believe four individual grievances that were made based on terms of the CBA. So the group grievance challenged a medical provision in the CBA and said Kalitta isn't entitled to do this according to the CBA. And so that's separate, of course, from our Title VII and ADA claims here. But does that suggest that the CBA does cover this? No, not at all, Your Honor. The Supreme Court said in Lingle that just because you have a grievance that might over and it wouldn't entirely overlap but some of the remedies would overlap with another viable claim, that doesn't suggest preemption. Finally, if there really was a duty that was implicated by one of the proposed accommodations, there's still no RLA preclusion because Kalitta was intentionally applying or would be intentionally applying at CBA in a discriminatory manner. Uniform precedent shows that such cases cannot be conclusively resolved by the CBA. See, if a company always provides schedule workarounds for pilots who can't go to specific countries but chooses not to just with respect to one protected class, then that's a purely factual question about the company's conduct and motives. Are vaccinated people a protected class? Religious people who have a religious objection to the vaccine are a protected class under Title VII. Wouldn't non-religious people who object to the vaccine be scooped in the same way? Well, Your Honor, that is a separate question whether they would have to be accommodated at all. Again, as the Supreme Court has explained in Abercrombie and then more recently Groff, Kalitta has identified here a subset. They think they've identified a problem because you can't accommodate these pilots because you'd have to send them to these separate countries. And so it's a protected class because it's based on not just a religious belief in the ether, right, but a specific religious belief pertaining to the vaccine. And you now have to compare that group against what Kalitta normally does when a pilot can't go to a specific country. That's why you can see intentional discrimination. What does Kalitta do here with pilots who don't have any religious objection, whatever, but they have health reasons why they can't be vaccinated? They did the same thing if they were granted a medical accommodation, Your Honor. But, you know, recall that before the mandate was enforced, the president of Kalitta said there will be no accommodations here. And then later the vice president comes back and says, well, you've got your accommodation. It's unpaid leave. There was never any plan to offer anything to these pilots except for unpaid leave followed by termination. Thank you. Thank you. Good afternoon. May it please the Court, Nicholas Bart on behalf of the appellees. I'd like to begin this afternoon by addressing a fundamental misrepresentation with regard to the provision of the CBA that Mr. Sullivan has relied on exclusively as the basis for indicating that this Court would not have to interpret the CBA in order to resolve these claims. Interestingly, the plaintiffs admit that under Kalitta's seniority-based bidding system, pilots bid their lines on their preference based both on destination and schedule. But the plaintiffs then come back and say the seniority only protects the schedule, not the destination. That's false. The only provision that the plaintiffs cite in support of that assertion was Section 18 of the CBA. That section does not deal with either bidding or scheduling, but rather hours of service. It addresses a pilot's duty day, and the cited provision references only what happens to a pilot's duty day in the event his original flight is canceled or delayed. Is there a provision in the CBA that does cover what we're talking about here? There is a provision in the CBA that indicates bid lines are awarded in seniority preference. That's both destination and scheduling. Where is that in this record? We did cite it in the record, Your Honor. Contrary to the representations, we did provide various provisions of the CBA. We did not provide the entirety of the CBA. We provided various provisions that we believed were applicable here. Did you provide the seniority, which I understand is Section 13, and the scheduling, which I understand is Section 17? Are they in the record? I believe we referenced. I'm not certain, Your Honor, that we've attached them. We referenced relevant portions, which I think the significant portions of which plaintiffs have admitted here today, they do not contend. Do you think it would have been helpful to the district court and to us to actually have that? Your Honor, it may have been helpful. However, when the standard is if the court must interpret any provision of the CBA, the analysis must stop because the issue is a minor dispute that must be resolved by arbitration. So you're saying no matter what it says, if it's in there and the court eventually might have to look at it, that's all we need to know? Your Honor, not that the court may have to look at it, but that the court may have to interpret it as we've alleged and as we've asserted in our submissions. We believe that we've provided the court enough portions of the CBA and enough description of how the court would need to interpret those provisions as to end the analysis right there. So specifically, which ones do you say we need to interpret? Which sections do we need to interpret? Specifically, CLTA has cited the seniority bidding process and has quoted the portions of that section. Plaintiffs do not dispute that bids are awarded in seniority basis, both in terms of destination and schedule. So the seniority bidding process, is that section 13? I would have to check. I believe that it is 12 or 13, Your Honor. Okay, and so my understanding is leaves of absence are section 12 and seniority is 13. I could be completely wrong. But if that's the case, you're saying you've quoted it, the seniority provision 13, and that's enough for us to be saying that it needs to be interpreted here. Particularly in light of the dispute amongst plaintiffs have introduced one section, 18, that they argue provides the airline the right to unilaterally alter the destination. The admitted portion that we have cited is a contrary assertion, and whether the court, no matter how the court comes down on that issue, it's undisputed it would have to interpret the CBA in order to determine which provision applies. Significantly, all the relevant stakeholders to this claim or these claims, those being the plaintiff pilots, the airline, and their representative union, have asserted multiple provisions of the CBA that they say support their respective positions. When encountered with a number of competing provisions, this court must necessarily, according to M. Swiler, compare those in their context, in their entirety, to give each full force and effect, and thereby must interpret them. Once that decision is made, the analysis stops because the matter is defined as a minor dispute, which is the sole purview of the arbitration board under the RLA. Okay, so there were five different counts in the complaint. Two had to do with failure to accommodate, two had to do with retaliation, and one had to do with disability discrimination based on perceived disability. Would that last claim require interpretation of the CBA? Yes, because all Title VII claims recognize an exception for accommodations that could create an undue burden, and therefore require that element to be analyzed in the context. But I thought that for claims based on perceived disability, that there was no accommodation aspect to those claims under several of our cases, in particular the Babb case and others. The plaintiffs in this claim, Your Honor, had put forth a request for accommodation. They also have admitted in their submissions that the manner in which the airline administered its COVID policy applied equally to all employees, not just those who requested religious accommodation, not those who requested a medical accommodation, but even those who may not have wanted to receive the vaccine for no reason and who made no request for accommodation. In that sense, the policy was provided uniformly, and unlike the Abercrombie case in which the unaffected employees were allowed to go about their employment without interruption, in this instance, all unvaccinated employees were terminated after the deadline set forth in the executive order. Therefore, there was no disparate treatment. I think it's also significant to note, as the Court had acknowledged, that the Plaintiff-Pilot's representative union has filed grievances invoking the benefits and protections of the collective bargaining agreement and is in the process of pursuing those grievances. Those grievances, despite what the plaintiffs have represented in their submissions, directly assert that the company's vaccination policy violated various provisions of the CBA, not just medical provisions but management rights and, quote, other provisions yet to be determined. The Pilot's representative union has indicated that they believe that the administration of the vaccination policy constitutes a minor dispute. Once the Plaintiff's representative union has made that assertion, the individual members of the union are without authority to take a contrary position and pursue these claims under a different name in a different venue. What do you rely on as your authority for that? Dubikis, Your Honor, Dubikis v. Weyer, I believe, and that's set forth in our submission. Is that a case from this circuit? It is not, Your Honor. I believe that's a Ninth Circuit case. Have we spoken on this particular matter? Not on that direct issue, Your Honor.  What is the status of the union's case? Those remain pending. There's been some initial proceedings on the union grievances. Those are currently, as I understand it, on appeal and pending. And to whom do they appeal? They appeal through the arbitration board, system board of review that's established under the Railway Labor Act, Your Honor. And then when there's a conclusion under that, is there any judicial review in the court of appeals? Only in very limited circumstances, Your Honor, that I don't believe would apply here. Fraud in the pursuit of the grievance or failure of the union to properly put forth the grievance, neither of which are applicable here because the union actually initiated the grievances, as was indicated earlier, both on behalf of all of the pilots similarly affected and then individually on behalf of certain four additional pilots. And so the retaliation claims, the district court stayed essentially pending our review on appeal of the RLA? The district court did allow the retaliation claims to stand, Your Honor, although we would suggest that as this court reviews this order de novo, it may elect to review that position on retaliation because this circuit has routinely recognized that where a request, the only protected activity supporting the retaliation claim is a request for accommodation, the claim must be dismissed. And here the plaintiffs have put forth no evidence to suggest that there was any support for a claim of retaliation other than the request for accommodation itself. I would also like to... Is that issue ripe for us to be deciding at this point? I believe that the court may elect to review it as it reviews the district court's opinion de novo. It was fully briefed. The fact that the district court allowed those claims to remain, I do not believe, puts it beyond this court's purview. And I would like to end it by simply addressing some of the arguments the plaintiffs' counsel made with regard to no showing of violation of the CBA. I think it's axiomatic. If the airline were required to set aside particular routes to accommodate the needs of the affected plaintiffs, those routes are necessarily not available for perhaps senior pilots who may have preferred to bid those routes. The changing of the route may result necessarily in a changing of schedule and it may also result in accompanying changing of layovers, all of which would supplant the affected plaintiff preference for those of the more senior pilot, thereby disrupting the seniority-based bidding system. This court has consistently found, as have others, that any disruption to a seniority-based bidding system necessarily requires interpretation of the CBA and necessarily requires an undue hardship for the company because the violation of the CBA itself is the undue burden. And that's been laid forth, excuse me, both in Stanley and in Vertz in this circuit, as well by the Supreme Court in Hardison and this court also in Insweiler. I'm curious, is the entirety of the seniority provision quoted anywhere in our materials? I understand it's not been submitted into the record as record evidence, but is the entirety of the seniority provision quoted, for instance, in your brief or anywhere else? Not the entirety, Your Honor. The CBA itself is in excess of 300 pages. But I'm just asking about one section. Understand. Not the entirety. It is not quoted, no. Thank you. What about the plaintiff's regarded-as claims as to whether those would have to be looked at to determine whether the collective bargaining agreement would be interpreted if the contention is that those would not provide an undue hardship? Why wouldn't some regarded-as claims have to be looked at to determine if that were true, if they could come within the purview of the collective bargaining agreement? So it's our assertion, Your Honor, that all Title VII claims must include, by necessity, an analysis of the undue hardship prong, and therefore they would come in, interpretation of the CBA. It's only those state or federal claims that occur entirely outside the purview of the CBA that would not be precluded. And NSWILER, I believe, stands for the proposition that unless the question presented is a purely factual one regarding the motive of the employer's conduct, and any time that the analysis focuses on the employer's interpretation and implementation of a provision of the CBA, then the CBA is triggered, interpretation is required, and the dispute is a minor dispute for RLA arbitration. Well, couldn't the parties disagree as to whether the claims outside the purview of the CBA? Certainly, and that, I believe, is what NSWILER addressed when it said when faced with competing proposals or competing propositions with regard to the CBA, the court necessarily had to make an interpretation and therefore did not have subject matter jurisdiction because the matter was a minor dispute. Thank you. Let me start with Brown from the Seventh Circuit, which Kalita cited favorably. It says, quote, an employer cannot ensure the preclusion of a plaintiff's claim merely by asserting certain CBA-based offenses to what is essentially a non-CBA-based claim or by arguing that the action challenged by the plaintiff is arguably justified by the terms of the CBA. That's exactly what happened here, and that was the argument that the Magistrate Judge bought. As an example, we ---- How do you figure out if it's arguably justified by the terms of the CBA without interpreting what's in the CBA? Arguably justified isn't the standard, Your Honor. The Supreme Court specifically disavowed that in Norris. It has to be more than that, which is why you looked at whether or not there was an actual violation in Stanley before finding preclusion. And so, again, there's no dispute over what the terms mean here, except that I can point to you. My friend said that I misrepresented what was done in the record, but if you go to page 306 of the record, you see page 66 of the CBA, and you turn the page to 307, you see that they've skipped every provision concerning seniority, scheduling, and so forth. Again, with all the incentive in the world to put those before the court. If they were actually saying that we ---- You had incentive, too, didn't you, to put those in? No, Your Honor, because they're not applicable. We're not challenging them. So we had no incentive to do that. But again, Stanley found violations. There's none here. Again, and we don't even have to touch the contract, because CLIDA didn't have to set aside routes to let our pilots bid. That's a fabrication as well. All you had to do was, again, put our pilots last in line. As under Groff, allow our pilots to voluntarily swap schedules with people who would let them. The record is devoid, because the district court jumped the gun here and wouldn't give us discovery. The record is devoid of even how many pilots we think that this might affect, and what small percentage that might be. Are there cases where a court has granted discovery before deciding on the RLA preemption issue? I can't find one where that hasn't happened, Your Honor. So your answer is yes. That's correct, Your Honor. So it's always with the benefit of development of the record. But importantly, I mean, frankly, I don't think we need that here even to show the intentional discrimination that's taken place. The Supreme Court just said in Groff that if an employer specifically acts with the intention of not providing an accommodation, that that's a problem. And that is what happened here. Now, one last point I'd like to, both Judge Moore and Judge Clay, you all were talking about the grievances, I believe. If you look at page 403 of the record, you see an email from the attorney for ALPA. She says, if you have an exemption, the avenue to protest, disagree with your accommodation is through an EEOC complaint. It is not a matter for the grievance system of the CBA, as it does not arise under the CBA or under the RLA, and therefore is an issue beyond ALPA's representational authority. So this stuff about the grievances that ALPA brought has nothing to do with these guys. What is the ALPA case about then? It's about whether or not they could impose a vaccine mandate at all on every pilot, given that there are medical, the CBA outlines medical conditions and physical exams and stuff like that that pilots have to go through. So it applies to all pilots, whether they were vaccinated or not, whether they had an accommodation, an exemption against it or not. Okay. Thank you. Thank you both for your argument. The case will be submitted. And would the clerk call the next case, please?